# UNITED STATES DISTRICT COURT

for the

District of New Hampshire

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A LIGHT GREEN GOOGLE CELLULAR PHONE WITH IMEI NUMBER 353644934883248

Case No. 25-mj- 194-01-AJ

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ________ District of New Hampshire , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 875(c) | Interstate transmission of threats |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

❐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Brian J. Evans
*Applicant's signature*

Brian J. Evans, USPIS, Investigator
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: **Sep 3, 2025**

*Judge's signature*

City and state: Concord, New Hampshire

Andrea K. Johnstone, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| IN THE MATTER OF THE SEARCH OF A LIGHT GREEN GOOGLE CELLULAR PHONE WITH IMEI NUMBER 353644934883248 | Case No. ____________________<br><br>**Filed Under Seal** |
|---|---|

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brian J. Evans, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I have been employed as a U.S. Postal Inspector by the United States Postal Inspection Service ("USPIS") since July 2003. I was assigned to the Mail Fraud Team in Columbia, Maryland for approximately three years, and the Prohibited Mail Narcotics Team in Linthicum Heights, Maryland for approximately four years. After transferring to the Boston Division in 2010, I was assigned to the Mail Fraud/Financial Crimes Team in Boston, Massachusetts for approximately six years beginning in 2010. I have been assigned to the Northern New England Multi-Functional Team in Manchester, New Hampshire since September 2016, where I have been chiefly responsible for the Mail Fraud and Financial Crimes assignment. I have also handled numerous Workplace Violence calls and participated in over a hundred USPS Threat Assessment Team calls concerning threats within the USPS.

3. I have received extensive training in criminal investigation procedures and criminal law, and I have assisted senior postal inspectors and other law enforcement agents in

numerous criminal investigations and in the execution of search warrants. While assigned to the Mail Fraud and Financial Crimes teams, I have received training from the USPIS in the investigation of Basic Mail Fraud, International Mail Fraud, Corporate Fraud, International White Collar and Telemarketing Fraud, Forensic Accounting, and Asset Forfeiture. I have successfully interdicted numerous parcels sent through the U.S. Mail that contained U.S. currency, checks, and USPS Postal Money Orders which were sent as proceeds/payments for various mail fraud schemes, frauds against the elderly, telemarketing fraud, foreign lottery scams, romance scams, and eBay frauds.

4. While on the Northern New England Multi-Functional Team and while employed in Maryland, I have also been responsible for conducting investigations involving the transportation of controlled substances or proceeds/payments for controlled substances through the United States Postal Service ("USPS"). I have intercepted numerous USPS Priority Mail Express or Priority Mail parcels which were found to have contained controlled substances or the proceeds/payments for controlled substances being transported through the United States Mail. I have received additional training from the Washington Baltimore High Intensity Drug Trafficking Area (HIDTA) Task Force and the Northeast Counterdrug Training Center (Top Gun Undercover Drug Law Enforcement Training for Narcotics Investigators and Prosecutors) and have completed the International Narcotics Interdiction Association Criminal Interdiction Training course. I have received asset forfeiture training and have consulted with senior postal inspectors and asset forfeiture specialists.

5. As a Postal Inspector, I am authorized by law or by a government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of federal criminal laws.

6. The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and computer records related to this investigation, and information gained through my training and experience.

7. I make this affidavit in support of an application for a search warrant for the [light green Google cellular device with an IMEI number of 353644934883248that was seized from the Springfield, Vermont Police Department by the United States Postal Inspection Service on September 2, 2025. The seized device is currently in the custody of the USPIS Manchester, New Hampshire domicile located at 955 Goffs Falls Road, Manchester, NH.

## STATUTORY AUTHORITY

8. Title 18, United States Code, Section 875(c), makes it a crime for anyone to "transmit[] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another."

## PROBABLE CAUSE

9. On August 25, 2025, United States Postal Service ("USPS") employees working at the Meredith, New Hampshire Post Office ("MEREDITH POST OFFICE") in Meredith, New Hampshire called the Meredith, New Hampshire Police Department ("MEREDITH PD") and the USPIS about death threats against three current MEREDITH POST OFFICE employees and a bomb threat of the MEREDITH POST OFFICE made by former USPS Rural Mail Carrier Patrick Salvatore ("SALVATORE"). Postal Inspectors were contacted to respond to the threats. Inspectors contacted the MEREDITH PD and participated in a USPS Threat Assessment Team meeting via Zoom. Two MEREDITH POST OFFICE employees gave statements saying

SALVATORE stated he would "kill" three employees, he was out actively looking to kill a particular employee ("VICTIM 1") today, and that he would "blow the post office up" that day.

10. MEREDITH PD filed three criminal complaints for Criminal Threats Against a Person, Stalking-Reasonable Person to Fear, and Stalking-Notice of Order against SALVATORE due to the fact that VICTIM 1 had an active Stalking Final Order of Protection against SALVATORE since February 3, 2025. MEREDITH PD received an arrest warrant for SALVATORE in Belknap County in Laconia District Court on August 25, 2025. The arrest warrant was extraditable from other New England states back to New Hampshire.

11. On August 25, 2025, Postal Inspectors, MEREDITH PD, and Springfield, Vermont Police Department ("SPRINGFIELD PD") were able to determine SALVATORE'S vehicle was parked at a new address for SALVATORE in Springfield, Vermont. SPRINGFIELD PD was able to arrest SALVATORE at his residence without incident early in the morning on August 26, 2025, and SALVATORE's phone was seized during his arrest. SALVATORE had an initial appearance in Woodstock, Vermont and was released on a cash bail.

12. On August 27, 2025, Inspector Evans and USPIS Task Force Officer ("TFO") Brian Gacek interviewed three employees at the MEREDITH POST OFFICE. The phone log at the MEREDITH POST OFFICE showed approximately 19 phone calls from an anonymous number on August 25, 2025 between approximately 9:17 AM and 11:23 AM. A current MEREDITH POST OFFICE employee ("EMPLOYEE 1") said she received a telephone call from SALVATORE asking for his employment file. EMPLOYEE 1 stated she did not have any employment file for SALVATORE and later hung up since SALVATORE got angry and told her to "go fuck yourself."

13. A second MEREDITH POST OFFICE employee ("EMPLOYEE 2") stated she answered several of the next phone calls. EMPLOYEE 2 stated the caller kept asking where VICTIM 1 was located. EMPLOYEE 2 would not give out that information, especially since the caller did not say who they were. EMPLOYEE 2 said the caller eventually stated his name was SALVATORE. EMPLOYEE 2 said SALVATORE said he wanted to kill VICTIM 1 and two other employees. EMPLOYEE 2 also said SALVATORE said he wanted to "blow up the MEREDITH POST OFFICE today." EMPLOYEE 2 said she repeated that statement to the other employees and they called the MEREDITH PD.

14. VICTIM 1 was also interviewed. VICTIM 1 said he was often blamed by SALVATORE for making SALVATORE resign his USPS employment. VICTIM 1 stated SALVATORE was mostly quiet but his anger would start building up over time and then SALVATORE would become confrontational.

15. On August 28, 2025, SALVATORE turned himself in at the MEREDITH PD on the outstanding warrants. MEREDITH PD processed SALVATORE and officers mentioned that Postal Inspectors wanted to interview him, and SALVATORE agreed.

16. SALVATORE had been the subject of several reported threatening incidents while he was employed at the MEREDITH POST OFFICE, and after he voluntarily separated from the USPS on January 5, 2024. SALVATORE had been disciplined by a previous postmaster for exhibiting "violent, aggressive, and paranoid behavior." SALVATORE had been disciplined for throwing parcels, bullying other employees, and lunging at other employees. In April of 2024, the former postmaster said SALVATORE was given numerous disciplines to the point that he was at the potential firing stage, but instead SALVATORE resigned before that could happen. The former postmaster also said SALVATORE had been seen on different

carrier's routes and made those carriers felt harassed and nervous about his actions. The former postmaster applied for a Restraining Order from SALVATORE. In April of 2024, SALVATORE wanted to reapply for a position with the USPS in different offices, but SALVATORE has not been rehired.

17. In November of 2024, another former postmaster reported that pictures of VICTIM 1 were printed out on paper and were posted on several USPS collection boxes around Meredith, NH and a nearby town.

18. In December of 2024, more pictures of VICTIM 1 were found around Meredith, NH, as well as a note placed in a collection box addressed to the carrier that held his former mail delivery route. Several text messages were sent by SALVATORE to employees at the MEREDITH POST OFFICE saying "this is life or death for me" and "I can't let it go."

19. In January of 2025, the postmaster reported that SALVATORE was parked in front of the MEREDITH POST OFFICE at 6:00 AM and then rang the buzzer to the back of the post office. A clerk answered the bell and saw SALVATORE there demanding to speak with the postmaster about his employment file. SALVATORE was told the postmaster was not there and the employee closed the door. SALVATORE began cursing and kicking the back door to the post office and the dumpster outside. The employee said SALVATORE demanded to see the postmaster face-to-face and that "he better get his fucking ass in here, because I'm going to come back every day until he's here!" The employee called the MEREDITH PD, who had a hard time getting SALVATORE to leave. Ultimately, SALVATORE departed the premises. SALVATORE was subsequently issued a No Trespass Order from the MEREDITH POST OFFICE.

20. On January 17, 2025, SALVATORE repeatedly emailed USPS Human Resources in Portland, Maine about his employee file and the fact he wanted a USPS job in Canaan, New Hampshire. Human Resources contacted Inspector Evans.

21. On January 17, 2025, Inspector Evans and Inspector Sweet interviewed SALVATORE over the telephone. SALVATORE admitted to putting the pictures of VICTIM 1 around Meredith, New Hampshire, repeatedly emailing Human Resources, making social media posts about other USPS carriers, and refusing to leave the back door of the MEREDITH POST OFFICE. SALVATORE said he should be allowed to go back to work at the Canaan, New Hampshire Post Office. SALVATORE admitted he showed up on other carriers' routes while they delivered mail in Meredith, New Hampshire while he was no longer employed at the MEREDITH POST OFFICE. SALVATORE acknowledged that he had a No Trespass Order from the MEREDITH POST OFFICE and that a Restraining Order was likely coming from VICTIM 1 and possibly other employees. SALVATORE stated he would obey the No Trespass Order. SALVATORE was asked why he sounded like he would not stop his behaviors against MEREDITH POST OFFICE employees. SALVATORE stated he may not stop because he felt there was no other way to handle this or get the job he deserved at the Canaan, New Hampshire Post Office.

22. VICTIM 1 got a Stalking Final Order of Protection against SALVATORE on February 3, 2025, which said SALVATORE "shall not use, attempt to use, or threaten to use physical force against the plaintiff," and SALVATORE shall refrain from "engaging in any other conduct that would place the plaintiff in reasonable fear or bodily injury to the plaintiff."

23. On August 28, 2025, Inspector Evans and TFO Gacek interviewed SALVATORE at the Belknap County Jail. SALVATORE was read his Miranda Rights and he signed a form

indicating that he understood his rights and agreed to speak with investigators without a lawyer present. SALVATORE said he was upset about not getting his USPS employment file because he wanted another USPS carrier job in Vermont and that "triggered" him. SALVATORE said he thought former coworkers had prevented him from getting another USPS job. SALVATORE admitted he has a lot of resentment and anger towards the MEREDITH POST OFFICE, and he was paranoid about the situation he was in. SALVATORE said he was in constant "fight mode." SALVATORE stated he did call the MEREDITH POST OFFICE on August 25, 2025 "a bunch of times" using his cell phone (the "SUBJECT DEVICE") while in Springfield, Vermont. SALVATORE stated he blocked his cell phone number so that his number would not be visible to the recipient when he called the MEREDITH POST OFFICE. SALVATORE stated he only owned one cell phone and it was held by the SPRINGFIELD PD on August 26, 2025, following his arrest.

24. SALVATORE was adamant that he did not threaten to bomb the MEREDITH POST OFFICE, but did not deny threatening to kill VICTIM 1 or two other employees. SALVATORE did not want to talk about what he said on the phone to MEREDITH POST OFFICE employees, but said he was sorry and he said a lot of things he regretted and did not mean. SALVATORE said he understood that the employees may have been scared. SALVATORE admitted to saying he would kick in the back door like he tried to do previously, which had led to his current No Trespass Order and his Stalking Final Order of Protection. SALVATORE admitted to his previous conduct of putting pictures of VICTIM 1 around Meredith, NH, texting MEREDITH POST OFFICE employees about not letting the job go, putting a note in the collection box, repeatedly emailing Human Resources, and kicking the back door of the MEREDITH POST OFFICE. SALVATORE stated he needed some serious help

dealing with his anger management, and possibly medication as well. SALVATORE said he cannot let the USPS job go and he obsessed about it all the time. SALVATORE declined to give written consent to search his cell phone.

25. SALVATORE's cell phone, (the "SUBJECT DEVICE"), had been in police custody in Springfield, Vermont since August 26, 2025. On September 2, 2025, a postal inspector in Vermont retrieved the SUBJECT DEVICE from the SPRINGFIELD PD in Springfield, Vermont and transferred the phone to TFO Gacek in New Hampshire. The SUBJECT DEVICE is currently in the USPIS domicile, located at 955 Goffs Falls Road, Manchester, New Hampshire.

26. The SUBJECT DEVICE's content and applications may contain information concerning planning, researching, outlining, and execution of the criminal threats, both past and present. This information may include call logs, text messages, photos of the MEREDITH POST OFFICE, VICTIM 1's vehicle, family members, or residence, internet search history, and other information obtained by SALVATORE to plan out and execute his threats.

27. The SUBJECT DEVICE's applications may also contain communications with others to assist in this criminal activity and the Google searches could indicate the methods, means and plans of SALVATORE to execute these criminal threats. Google Maps information may contain searches sought to obtain the residence address of VICTIM 1 or routes planned for conducting these criminal actions.

## ELECTRONIC DEVICES, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

28. As described above and in Attachment A, this application seeks permission to search the cellular device and seize data and images that the cellular device might contain, which pertain to violations of Title 18, United States Code, Section 875(c). Some electronic data on the

cellular device may take the form of files, photographs, documents, and other data that is user-generated, as well as data that is automatically generated, including location data, communication logs, and logs pertaining to application usage. Other data might become meaningful only upon forensic analysis. There is probable cause to believe that this forensic electronic evidence might be on the cellular device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer or cell phone is evidence may depend on other information stored on the computer or cell phone and the application of knowledge about how the device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a

particular thing is not present on a storage medium.

29. Based on my knowledge, training, and experience, I know that:

e. Files or remnants of files can be recovered months or even years after they have been downloaded onto an electronic device, deleted, or viewed via the Internet. Electronic files downloaded to an electronic device can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is because when a person "deletes" a file from an electronic device, the data contained in the file does not necessarily disappear; rather, that data is no longer indexed but remains on the storage medium until it is overwritten by new data.

f. Wholly apart from user-generated files, electronic devices often contain electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and other files.

g. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." These files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

h. As further described in Attachment B, this application seeks permission to locate not only data that might serve as direct evidence of the crimes described on the warrant, but also for evidence that establishes how the cellular device were used, the purpose of its use, who used it, where it was used,

and when. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

i. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the cellular device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

j. The government intends to make and retain a full image copy of the seized media, so that a copy of the evidence, rather than the original evidence, can be examined. The government will seize and retain both the original evidence and any copies of this evidence. This procedure will ensure that the original evidence remains intact.

## MANNER OF EXECUTION

30. Because this warrant seeks only permission to examine a device already in law enforcement’s possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31. Based on the forgoing, I request that the Court issue the proposed search warrant, authorizing the search of the cellular device, as fully described in Attachment A, for items described in Attachment B of this affidavit.

Respectfully submitted,

/s/ Brian J. Evans
Brian J. Evans
U.S. Postal Inspector
United State Postal Inspection Service

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

Dated: Sep 3, 2025

Time: 12:32 PM, Sep 3, 2025

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

1. The property to be searched is a light green Google cellular device with an IMEI number of 353644934883248. The phone is currently secured in evidence at the USPIS Manchester, New Hampshire domicile located at 955 Goffs Falls Road, Manchester, New Hampshire.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

## ITEMS TO BE SEIZED

All information that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of Title 18, United States Code 875(c), those violations involving SALVATORE and occurring on August 25, 2025, for the device listed on Attachment A, including information pertaining to the following matters:

a. Evidence of threats towards VICTIM 1, the United States Post Office in Meredith, NH, and any others;

b. Any search, map, or geolocation history related to VICTIM 1, the United States Post Office in Meredith, NH, and any other individual or entity threatened by defendant;

c. Evidence of any planning, discussing, communicating and researching means, methods, opportunities, and techniques for injuring or inflicting harm on VICTIM 1, the United States Post Office in Meredith, NH, and any other individual or entity threatened by defendant;

d. Evidence indicating how and when the device was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

e. Evidence indicating the device owner's state of mind as it relates to the crimes under investigation;

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the USPIS may deliver a complete copy of the disclosed electronic data to the custody of the above-listed government personnel.

## ACCESS TO BIOMETRIC INFORMATION

During the execution of the search of the SUBJECT DEVICE described in Attachment A, law enforcement personnel are authorized to (1) press or swipe SALVATORE's fingers (including thumbs) to the fingerprint scanner of the SUBJECT DEVICE; (2) hold the SUBJECT DEVICE in front of SALVATORE's face and activate the facial recognition feature, for the purpose of attempting to unlock the SUBJECT DEVICE in order to search the contents as authorized by this warrant.